UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MOHAMMAD ANEES, | ) | |
|    Petitioner/Plaintiff | ) | |
| | ) | |
| | ) | |
|              v. | ) | C.A. NO. 12-cv-30183-MAP |
| | ) | |
| JANET NAPOLITANO, Secretary, | ) | |
| U.S. Department of Homeland | ) | |
| Security; ERIC H. HOLDER, JR., | ) | |
| U.S. Attorney General; HILLARY | ) | |
| CLINTON, Secretary, Department | ) | |
| of State; and U.S. Citizenship | ) | |
| and Immigration Services, | ) | |
|    Respondents/Defendants | ) | |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
FOR LACK OF JURISDICTION
(Dkt. No. 15)

September 24, 2013

PONSOR, U.S.D.J.

I.   INTRODUCTION

Plaintiff Mohammad Anees is a native of Pakistan
currently residing in Westfield, Massachusetts.  He has
brought this action seeking a declaration of his U.S.
citizenship, pursuant to the Immigration and Nationality
Act, 8 U.S.C. § 1503(a).  Defendants, Janet Napolitano,
Secretary of the Department of Homeland Security, Eric
Holder Jr., U.S. Attorney General, Hillary Clinton,
Secretary of the Department of State, and U.S. Citizenship

and Immigration Services ("USCIS"), filed a motion to
dismiss for lack of jurisdiction.  (Dkt. No. 15.)  Because
the plain language of 8 U.S.C. § 1503(a)(2) is a clear
limitation on jurisdiction here, the court will grant
Defendants' motion.

## II.  FACTS[1]

In 1981, Plaintiff was born in Pakistan.  Three years
later, Plaintiff's mother, Bilqis Fatima, divorced
Plaintiff's father under Pakistani and Islamic Sharia law.
At some point in the early 1990s, Fatima obtained lawful
permanent residence status and entered the United States.
In 1994, Fatima and Plaintiff's father once again obtained a
valid, legal divorce under Pakistani law from the Lahore
Cantonment board.  Fatima became a naturalized United States
citizen in May 1996, and on June 2, 1998, Plaintiff, before
turning eighteen, was admitted to the United States as a
lawful permanent resident.

In December 2001, Plaintiff was convicted in a

---

[1] For purposes of Defendants' motion to dismiss, the
court accepts as true the well-pleaded factual allegations
contained in the complaint, drawing reasonable inferences in
Plaintiff's favor. Gargano v. Liberty Intern. Underwriters,
Inc., 572 F.3d 45, 48 (1st Cir. 2009).

Connecticut court of two aggravated felonies, rendering him
deportable.  When removal proceedings commenced against him
in April 2002, Plaintiff moved to terminate them, arguing
that his convictions did not constitute aggravated felonies
or crimes involving moral turpitude justifying deportation.
On May 31, 2002, the court denied Plaintiff's motion and on
June 14, 2002 ordered his removal.

Plaintiff appealed the May 31, 2002, decision to the
Board of Immigration Appeals ("BIA"), which rejected his
arguments.  In 2004, he petitioned the Second Circuit Court
of Appeals for direct review of the BIA decision.

Late in 2002, while the BIA appeal was pending,
Plaintiff filed a writ of habeas corpus in the U.S. District
Court for the District of Connecticut.  Simultaneously, he
submitted an N-600 application with the Immigration and
Naturalization Service ("INS") seeking a certificate of
citizenship and applied for a passport from the U.S.
Department of State.  In both applications, and in court, he
argued that former INS Act § 321, 8 U.S.C. § 1432, provided

for his derivative United States citizenship.[2]  The INS
denied Plaintiff's N-600 application, and that decision was
affirmed by the CIS Administrative Appeals Office ("AAO") in
March 2004.  Despite the INS denial, the State Department
issued Plaintiff a United States passport on June 24, 2005.
After Plaintiff obtained his passport, the question of his
citizenship appeared to have been resolved, and thus his
cases before the U.S. District Court in Connecticut and the
Second Circuit were closed without final adjudication of the
issues.

On October 8, 2009, officers from U.S. Immigration and
Customs Enforcement ("ICE") arrested Plaintiff at his home
in Westfield, Massachusetts, seized his U.S. passport, and
placed him in custody.  Although Plaintiff was eventually
released, ICE did not return his passport.  In May 2010, he
filed a "Statement Regarding a Lost or Stolen Passport" with
the U.S. Department of State, which, in turn, revoked his

---

[2] Former INS Act § 321, 8 U.S.C. § 1432, provided for
derivative citizenship when the applicant was in the custody
of a naturalized U.S. citizen and was lawfully admitted to
the U.S. for permanent residence prior to his eighteenth
birthday.  That Act was repealed by the Immigration and
Nationality Act, Pub. L. No. 106-395, § 103(a), 114 Stat.
1632 (2000).

previous passport and denied his application.

While at his home on August 12, 2010, Plaintiff was again taken into custody by ICE. At that time Plaintiff filed a complaint in this federal court, seeking declaratory relief, preliminary injunctive relief, and a writ for habeas corpus. The case was drawn to U.S. District Court Judge Rya W. Zobel. As part of the resolution of this complaint, Plaintiff was released from custody, and the USCIS reopened his N-600 application to take additional evidence.

While the renewed N-600 application process was unfolding, Plaintiff attempted to reopen his previously closed removal proceedings with the U.S. Immigration Court in Hartford, Connecticut. His motion to reopen was granted on February 17, 2011, and the case was transferred to Boston. Plaintiff requested that the court rescind the order of removal. The Boston Immigration Court delayed the case to await USCIS's decision in connection with his N-600 application. That immigration court proceeding is still pending.

On March 1, 2012, USCIS denied Plaintiff's N-600 application. That decision was affirmed by the AAO on

September 21, 2012.  As a result, Plaintiff filed this
action challenging the AAO's decision and requesting that
the court declare him a U.S. citizen.  In response,
Defendants filed the motion to dismiss now before the court.

### III.   DISCUSSION

A federal court is obliged to grant a motion to dismiss
under Fed. R. Civ. P. 12(b)(1) where it lacks subject matter
jurisdiction to hear the dispute.  The party invoking
jurisdiction carries the burden of proof.  Murphy v. U.S.,
45 F.3d 520, 522 (1st Cir. 1995), cert. denied, 515 U.S.
1144 (1995) (citation omitted).

A putative United States citizen can assert citizenship
affirmatively or defensively.  The two approaches follow
different procedural paths.

To apply for citizenship affirmatively, the applicant
must seek a certificate of citizenship by submitting Form N-
600 with USCIS.  8 U.S.C. § 1452(a); 8 C.F.R. § 341.1.  If
that application is denied, the petitioner can appeal the
decision to the AAO.  8 C.F.R. §§ 341.6 & 103.3(a).  Should
the AAO deny the appeal, the petitioner will be deemed to
have exhausted his administrative remedies and may file an

-6-

action for a declaratory judgment in U.S. District Court.  8
U.S.C. § 1503(a).

The issue of citizenship can also be raised defensively
in a removal proceeding in immigration court.  If the
defense does not succeed, and the court orders removal, the
petitioner can appeal the decision to the BIA.  8 C.F.R. §
1003.1(b).  If the BIA denies a petitioner's claim, he may
bring a petition for review with the appropriate federal
court of appeals.  8 U.S.C. § 1252(a)(5).  The court of
appeals can issue a decision on the citizenship claim or can
transfer the case to a district court if there is a genuine
issue of material fact as to the individual's nationality.
8 U.S.C. § 1252(b)(5).

If a petitioner succeeds utilizing the defensive
mechanism, he must still undertake the affirmative step of
seeking a certificate of citizenship from USCIS.  However,
"[a]fter an application for a certificate of citizenship has
been denied and the time for appeal has expired, USCIS will
reject a subsequent application submitted by the same
individual and the applicant will be instructed to submit a
motion to reopen or reconsider in accordance with 8 C.F.R.

-7-

103.5." 8 C.F.R. § 341.5(e).  Although a motion to reopen

or reconsider must usually be filed within thirty days,

"immigration authorities may excuse, in their discretion, an

untimely motion to reopen 'where it is demonstrated that the

delay was reasonable and was beyond the control of the

applicant or petitioner.'"  Ortega v. Holder, 592 F.3d 738,

746 (7th Cir. 2010) (citing 8 C.F.R. § 103.5(a)(1)(I)).

In this case, Plaintiff is pursuing citizenship

affirmatively by invoking 8 U.S.C. § 1503(a) as the basis

for jurisdiction.  Defendants argue that two restrictions in

that statute bar the court from hearing this case.

A.   8 U.S.C. § 1503(a).

In general, a petitioner appealing an adverse decision

of the AAO may bring an action in a federal district court

against the head of the department or independent agency

that is alleged to have denied him a right.  8 U.S.C. §

1503(a).  This statute, however, contains two critical

limitations on this jurisdiction.  Jurisdiction does not lie

where the "issue of such person's status as a national of

the United States (1) arose by reason of, or in connection

with any removal proceeding under the provisions of this

-8-

chapter, or any other act, or (2) is in issue in any such removal proceeding." § 1503(a)(1)&(2).  These limitations on jurisdiction serve to "protect removal proceedings from judicial interference."  Oretga, 592 F.3d at 744. Enforcement of these limitations ensures that a party exhausts administrative remedies before bringing a judicial action.

Defendants argue that both restrictions apply and each independently bars Plaintiff's case.  As such, they will be taken up in turn.

1.  8 U.S.C. § 1503(a)(1).

The first limitation on jurisdiction exists where the applicant's status as a national "arose by reason of, or in connection with a removal proceeding." 8 U.S.C. § 1503(a)(1).  "It is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of § 1503(a)(1)."  Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 398 (5th Cir. 2007).

Defendants argue that the sole purpose of Plaintiff's 2002 habeas petition was to counter the contemporaneous

-9-

removal initiative.  Because this litigation is at least
tangentially tied to that original habeas petition,
Defendants say, the claim here is "connected with" the
initial removal hearing.  In Defendants' view, the
"exception focuses on the proceeding in which the particular
claim to citizenship originates, not the proceeding in which
it is being pursued." Rios-Valenzuela, 506 F.3d at 398.

This argument is unpersuasive.  Even if the 2002 habeas
petition was somehow "connected with" the 2002 removal
proceeding, Defendants fail to offer a convincing
explanation for why this pending matter should be viewed as
"connected with" that litigation.

Courts have been skeptical of Defendants' "connected
with" argument.  In Henry v. Quarantillo, a plaintiff
submitted a second N-600 form approximately twenty months
after his initial removal proceeding had ended.  684 F.
Supp. 2d 298 (E.D.N.Y. 2010).  He based his second petition
on "new evidence" establishing his citizenship.  Id. at 305.
That court, like this one, faced the task of balancing the
broad "in connection with" statutory language with the
absurd result of forever restricting an additional

application for citizenship once an initial removal
proceeding terminated.  Id. at 304.  The court ultimately
distinguished the initial removal proceeding from the
subsequent N-600 application to conclude that the latter was
not "in connection with" the former.  Id. 303-04.  Failing
to make this distinction, the court said, would go "too far
in restricting removed persons from ever having a further
opportunity to present their claims to eligibility for. . .
United States citizenship."  Id. at 303 (citation omitted).

        The Henry court offers the best approach to deal with
the present case.  Four years passed between the end of the
previous litigation (i.e., the Second Circuit case and the
habeas petition) and ICE's first arrest of Plaintiff.
Because ICE continued to place Plaintiff in custody, he was
forced to file a new habeas petition with this court.  Only
as a result of that second habeas petition did USCIS reopen
Plaintiff's N-600 application to take more evidence.  Given
that the sole purpose of reopening the N-600 process was to
allow Plaintiff to present new evidence, and the process
stemmed solely from ICE's actions, this court must conclude,
as the Henry court did, that the new application is not

-11-

barred by the "in connection with" language.

Further, a significant distinction may be drawn between the 2002 habeas petition filed in Connecticut, which may have been connected with the 2002 removal proceedings, and the habeas petition filed in this court in 2010.  The latter "finds its genesis outside of the context of removal proceedings."  Rios-Valenzuela, 506 F.3d at 399.  Pretending otherwise would forever preclude Plaintiff from contesting his citizenship in this court, regardless of how remote and attenuated the past removal hearing was.  The more appropriate conclusion is that this proceeding is not "connected with" Plaintiff's initial claim of citizenship.

Unfortunately for Plaintiff, while he can clear the § 1503(a)(1) hurdle, the second limitation is far harder, indeed impossible, to get over.

   2.   8 U.S.C. § 1503(a)(2).

The second jurisdictional limitation applies where citizenship "is in issue" in a removal proceeding. § 1503(a)(2).  This restriction prevents judicial interference with an on-going proceeding in an immigration court, and serves to preserve § 1252 as the exclusive route to appeal

an unfavorable removal decision.  See <u>Phuc Huu Nguyen v.</u>
<u>USCIS</u>, No. 1:CV-09-2211, 2010 WL 3521910, *3-5 (M.D. Pa.
Aug. 31, 2010).

The few courts that have dealt with this section have
given its language a natural and plain meaning: where a
removal proceeding is pending, and citizenship is at issue,
the district court cannot hear the matter.  <u>See e.g.,</u> <u>Wilks</u>
<u>v. Farquarson</u>, 450 Fed. Appx. 1, 2-3 (2d Cir. 2011); <u>Seal v.</u>
<u>Holder</u>, No. C12-181-TSZ-BAT, 2012 WL 2881256, *2 (W.D. Wash.
May 31, 2012); <u>Patino v. Chertoff</u>, 595 F. Supp. 2d 310, 313-
14 (S.D.N.Y. 2009); <u>Hutchinson v. Mukasey</u>, No. 07CV-10716,
2007 WL 4323006, *2-3 (S.D.N.Y. Dec. 10, 2007).  It is
difficult to formulate any other possible meaning for the
statutory language; no court appears to have done so.

The main dispute here is whether the Plaintiff's
citizenship is actually <u>at issue</u> in the pending immigration
proceedings.  Defendants focus on Plaintiff's motion to
reopen the removal proceedings to demonstrate that the
question of his citizenship is directly at issue. (Dkt. No.
15, Ex. 3.)  Specifically, Plaintiff's motion to reopen
requested that the immigration court "rescind his order of

removal and . . . resolve the issue of whether he is a
United States Citizen." <u>Id.</u>  Throughout the motion,
Plaintiff asserts his claim for citizenship and the need for
the immigration court to rule on it.  <u>Id.</u>

Plaintiff suggests that despite the language of his
motion to reopen, his only purpose in filing the motion was
to stop ICE from continually placing him in custody.  The
removal proceedings would give USCIS the time to rule on the
N-600 petition, while curtailing ICE's ability to arrest
Plaintiff.

Although Plaintiff's argument attracts sympathy -- he
can hardly be faulted for attempting to avoid being arrested
and detained regularly -- any removal proceeding necessarily
puts the question of citizenship at issue.  As the Second
Circuit has discussed, "The Executive Branch may remove
certain aliens but has no authority to remove citizens.  An
assertion of United States 'citizenship is thus a denial of
an essential jurisdiction fact' in a deportation
proceeding." <u>Poole v. Mukasey</u>, 522 F.3d 259, 264 (2d Cir.
2008) (citations omitted).  No way exists to escape the fact
that Plaintiff's ongoing immigration proceedings placed his

citizenship at issue, and thereby subjected him to the
second jurisdictional limitation here.  At this time, 8
U.S.C. § 1503(a)(2) bars Plaintiff from invoking 8 U.S.C. §
1503 as a basis for jurisdiction.

B.   Declaratory Judgment Act, 28 U.S.C. § 2201, and All
     Writs Act, 28 U.S.C. § 1651.

     Plaintiff briefly mentions that the court should turn
to the Declaratory Judgment Act and the All Writs Act to
find a remedy for Plaintiff's claim. (Dkt. No. 18, p. 10-
11.)  However, as Plaintiff concedes, neither serves as an
independent source of federal court jurisdiction.  See U.S.
v. Denedo, 566 U.S. 904, 911 (2009) ("As the text of the All
Writs Act recognizes, a court's power to issue any form of
relief -- extraordinary or otherwise -- is contingent on
that court's subject-matter jurisdiction over the case or
controversy."); Colonial Penn Grp., Inc. v. Colonial Deposit
Co., 834 F.2d 229, 232-33 (1st Cir. 1987)("Federal
jurisdiction does not lie simply because relief is requested
under the federal Declaratory Judgment Act.")  Thus, neither
statute offers a reliable basis for jurisdiction in this
matter.

## IV.  CONCLUSION[3]

For the foregoing reasons, Defendants' Motion to Dismiss

(Dkt. No. 15) is hereby ALLOWED.  The clerk will enter

judgment of dismissal.  This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge

---

[3] This ruling will, regrettably, mean further delay in
the resolution of Plaintiff's status.  Fortunately, an
avenue for judicial relief still remains open.  If Plaintiff
is unsuccessful in his pending matter before the immigration
court, 8 U.S.C. § 1252 provides a direct route to judicial
review.  If he succeeds in immigration court, he can
petition the U.S. Citizenship and Immigration Services
("USCIS") to reopen his N-600 application.  While the USCIS
will have some discretion in its review, the Seventh Circuit
has pointedly observed that "an individual...who is armed
with an order of an IJ [immigration judge] terminating
removal proceedings in her favor, certainly will make at
least a prima facie showing that both her change of status
(as non-removable) and the termination of removal
proceedings constitute new facts for purposes of a motion to
reopen." Ortega v. Holder, 592 F.3d 738, 745 (7th Cir.
2007).  The court assumes the USCIS will respect this
sentiment.